1
2
3
4
5
6
7

8      **UNITED STATES DISTRICT COURT**

9      **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    ALEX TORRES,                                    Case No.:  3:17-cv-01273-H-PCL

12                                    Plaintiff,       **ORDER:**

13    v.

14    NANCY A. BERRYHILL, Acting                      **(1) DENYING PLAINTIFF'S
      Commissioner of Social Security,                    MOTION FOR SUMMARY
15                                                         JUDGMENT; and**
                                     Defendant.
16                                                      [Doc. No. 16]

17

18                                                    **(2) GRANTING DEFENDANT'S
                                                          CROSS-MOTION FOR
19                                                        SUMMARY JUDGMENT**

20                                                      [Doc. No. 17]

21

22         On June 21, 2017, Plaintiff Alex Torres ("Plaintiff") filed a complaint against

23    Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Acting

24    Commissioner" or "Defendant"), seeking judicial review of an administrative denial of

25    disability benefits under the Social Security Act ("the Act").  (Doc. No. 1.)  On October

26    20, 2017, the Acting Commissioner answered Plaintiff's complaint and lodged the

27    administrative record.  (Doc. Nos. 13, 14.)  On December 4, 2017, Plaintiff filed a motion

28    for summary judgment, asking the Court to reverse the Acting Commissioner's final

decision and either direct the Social Security Administration to award benefits, or in the alternative, remand for further administrative proceedings. (Doc. No. 16-1.) On January 12, 2018, the Acting Commissioner cross-moved for summary judgment, asking the Court to affirm the Acting Commissioner's final decision. (Doc. No. 17-1.) For the reasons below, the Court denies Plaintiff's motion for summary judgment, grants the Acting Commissioner's cross-motion for summary judgment, and affirms the Acting Commissioner's final decision.

## BACKGROUND

On June 8, 2015, Plaintiff applied for disability insurance benefits, claiming a disability onset date of December 15, 2012. (AR 10.) Plaintiff later amended the alleged onset date to December 15, 2013. (Id.) The Social Security Administration ("SSA") initially denied Plaintiff's application for benefits on July 6, 2015, and denied reconsideration on November 4, 2015. (Id.) On November 9, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.) The ALJ held a hearing on Plaintiff's application on January 17, 2017. (Id.) Plaintiff testified at the hearing and was represented by counsel. (Id.) The ALJ also heard testimony from Dr. John Kwok, an independent medical expert, and Mark Remas, an independent vocational expert. (Id.)

On February 9, 2017, the ALJ issued a written decision, analyzing Plaintiff's claim and determining that Plaintiff had not met his burden of proof. (Id. at 10–20.) SSA regulations require ALJs to use the following five-step inquiry when determining whether an applicant qualifies for disability benefits: (1) has the claimant been gainfully employed since the time of the disability onset date; (2) "is the claimant's impairment severe"; (3) "does the impairment 'meet or equal' one of a list of specific impairments described in the regulations," and if not, what is the claimant's residual functional capacity ("RFC")[1]; (4) is the claimant capable of performing past relevant work; and (5) "is the claimant able

---

[1] SSA regulations define residual functional capacity as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

3:17-cv-01273-H-PCL

to do any other work." Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); see 20 C.F.R. § 404.1520(a)(4)(i-v).

Here, the ALJ determined at step one that the Plaintiff had not been gainfully employed since the disability onset date of December 15, 2013. (AR 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the lumbar spine, and obesity. (Id.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that amounted to one of the SSA regulations' enumerated impairments. (Id. at 12–13.) The ALJ then determined that Plaintiff had a RFC to perform "light work," as defined in 20 C.F.R. 404.1567(b), "except [that he] is limited to frequent balancing, bending, climbing, and kneeling; occasional stopping and crouching; and no crawling or climbing of ladders, ropes, or scaffolds." (Id. at 13–18.) At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (Id. at 18.) However, at step five, the ALJ concluded that Plaintiff could perform light jobs such as "Bench Assembler," "Survey Worker," and "Inspector/Hang Packager." (Id. at 19.) Consequently, the ALJ determined that Plaintiff was not disabled from December 15, 2013, the alleged onset date, through February 9, 2017, the date of the ALJ's decision. (Id. at 19–20.)

On April 15, 2017, the Social Security Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (Id. at 1.)

**LEGAL STANDARDS**

**A.    The Social Security Administration's Sequential Five-Step Inquiry**

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Act. 20 C.F.R. § 404.1520(a)(4)(i-v). To qualify for disability benefits, a claimant must establish that he or she is "disabled," meaning that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.

1 1995).

2      Step one in the sequential evaluation considers a claimant's "work activity, if any."

3 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  An ALJ will deny a claimant disability

4 benefits if the claimant is engaged in "substantial gainful activity."  Id. §§ 404.1520(b),

5 416.920(b).

6      If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to

7 step two to ascertain whether the claimant has a medically severe impairment or

8 combination of impairments.  Id. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The so-called

9 "severity regulation" dictates the ALJ's step-two analysis.  Bowen v. Yuckert, 482 U.S.

10 137, 140-41 (1987).  Specifically, an ALJ will deny a claimant's disability claim if the

11 ALJ does not find that a claimant suffers from a severe impairment, or combination of

12 impairments, which significantly limits the claimant's physical or mental ability to do

13 "basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

14      If the impairment is severe, however, the evaluation proceeds to step three.  At step

15 three, the ALJ determines whether the impairment is equivalent to one of several

16 enumerated impairments that the SSA deems so severe as to preclude substantial gainful

17 activity.  Id. §§ 404.1520(d), 416.920(d).  An ALJ conclusively presumes a claimant is

18 disabled if the impairment meets or equals one of the enumerated impairments.  Id.

19      If the ALJ concludes that a claimant does not suffer from one of the SSA

20 regulations' enumerated severe impairments, the ALJ must determine the claimant's RFC

21 before proceeding to step four of the inquiry.  Id. §§ 404.1520(e), 416.920(e).  An

22 individual's RFC is his or her ability to do physical and mental work activities on a

23 sustained basis despite limitations from his or her impairments.  See id. §§ 404.1545(a)(1),

24 416.945(a)(1).  The RFC analysis considers whether the claimant's "impairment(s), and

25 any related symptoms, such as pain, may cause physical and mental limitations that affect

26 what [the claimant] can do in a work setting."  Id.  In establishing a claimant's RFC, the

27 ALJ must assess relevant medical and other evidence, as well as consider all of the

28 claimant's impairments, including impairments categorized as non-severe.      Id.

4

§§ 404.1545(a)(3-4), (e), 416.945(a)(3-4), (e).

Given the claimant's RFC, the ALJ determines at step four whether the claimant has the RFC to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. Id. Conversely, if the claimant does not have the RFC to perform his or her past relevant work, or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's inquiry, the ALJ must determine whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. Id. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1). If the claimant is able to do other work, the claimant is not disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). However, if the claimant is not able to do other work and meets the duration requirement of twelve months, the claimant is disabled. Id. Although the claimant generally continues to have the burden of proving disability at step five, a limited burden shifts to the SSA, such that the SSA must present evidence demonstrating that other jobs the claimant can perform—allowing for RFC, age, education, and work experience—exist in significant numbers in the national economy. Tackett, 190 F.3d at 1099.

**B. Standard of Review**

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in a federal district court. See 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security determinations is limited." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). The court will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of

Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews, 53 F.3d at 1039). The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's determination. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison, 759 F.3d at 1010 (quoting Shalala, 53 F.3d at 1039).

Even if the ALJ commits legal error, a reviewing court will uphold the decision where that error is harmless—that is, where the error is "inconsequential to the ultimate nondisability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. at 1111 (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

## DISCUSSION

Plaintiff argues that the ALJ improperly discounted the opinion of his treating physician, Dr. Irma Lopez, in making its RFC determination. Specifically, Plaintiff argues that the ALJ: (i) gave too much weight to Plaintiff's physical examination results in deciding not to accord conclusive deference to Dr. Lopez's opinion that Plaintiff's impairments are severe enough to prevent him from working; and (ii) failed to appropriately consider the factors outlined in 20 C.F.R. § 404.1527(c) in deciding to give Dr. Lopez's testimony little weight. (Doc. No. 16-1 at 2–7.) Plaintiff expressly disclaims any argument that the ALJ's RFC assessment was not supported by substantial evidence, and instead avers that the sole "question presented is whether the ALJ committed legal error of failing to articulate specific and legitimate reasons for rejecting Dr. Lopez's opinions[.]" (Doc. No. 19 at 3.) The Acting Commissioner argues that the ALJ appropriately weighed the competing medical evidence in the record, and that the ALJ's final decision is supported by substantial evidence. (Doc. No. 17 at 3–15.) For the

1  following reasons, the Court denies Plaintiff's summary judgment motion and grants the

2  Acting Commissioner's cross-motion.

3  **A.  The ALJ Provided Specific and Legitimate Reasons for Declining to Give**

4  **Dr. Lopez's RFC Opinion Controlling Weight**

5  Plaintiff first argues that the ALJ erred by not giving controlling weight to the

6  opinion of his treating physician, Dr. Lopez, in assessing his RFC.  The Court disagrees.

7  Social Security regulations provide that for claims filed before March 27, 2017, the

8  medical opinion of a claimant's treating physician should be given "controlling weight" if

9  it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

10  and is not inconsistent with the other substantial evidence in [the claimant's] case record."

11  20 C.F.R. § 404.1527(c)(2).  "If a treating or examining doctor's opinion is contradicted

12  by another doctor's opinion," as is the case here, "an ALJ may only reject it by providing

13  specific and legitimate reasons that are supported by substantial evidence."  Ryan v.

14  Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart,

15  427 F.3d 1211, 1216 (9th Cir. 2005)).  "The ALJ can meet this burden by setting out a

16  detailed and thorough summary of the facts and conflicting clinical evidence, stating his

17  interpretation thereof, and making findings."  Magnallanes v. Bowen, 881 F.2d 747, 751

18  (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

19  In the proceedings below, Plaintiff introduced a "Medical Source Statement" from

20  Dr. Lopez dated January 19, 2017.  (AR 458–59.)  Dr. Lopez's statement noted that

21  Plaintiff: (i) experiences severe pain with talking or standing for long periods; (ii) reports

22  sharp pain and weakness in his right leg; and (iii) is unable to get out of bed due to lower

23  back pain.  (Id. at 458.)  The statement opined that Plaintiff could: (i) sit for three hours per

24  day; (ii) stand or walk for three hours per day; (iii) occasionally lift ten pounds or less

25  during a standard workday; and (iv) rarely lift twenty pounds during a standard workday

26  (and never more than twenty pounds).  (Id. at 458–59.)  Dr. Lopez further noted the

27  following limitations that would affect Plaintiff's ability to work at a regular job on a

28  sustained basis: no stooping, no pushing, no kneeling, no prolonged standing or walking,

no repetitive reaching, no bending, and no work requiring hyper-vigilance. (Id. at 459.) Assessing all of Plaintiff's symptoms, Dr. Lopez opined that Plaintiff would likely miss more than three days of work per month as a result of his impairments. (Id.)

After reviewing Dr. Lopez's findings in detail, the ALJ determined that Dr. Lopez's opinion was entitled to "[l]ittle weight . . . in light of the record as a whole." (Id. at 16.) The ALJ reviewed treatment notes from Plaintiff's orthopedists from 2012 through 2015, which generally noted that Plaintiff suffers from "mild" and "unremarkable" leg and back symptoms. (Id. at 14–16.) The ALJ noted that Plaintiff had negative straight leg raising tests on three separate occasions, could stand on his toes and heels without difficulty, and tested normal on a series of tests designed to measure motor deficits and neuron dysfunction. (Id. at 16.) Because Dr. Lopez's opinion that Plaintiff suffers from a number of severe physical impairments was inconsistent with the great bulk of Plaintiff's treatment history, the ALJ determined not to give the opinion controlling weight. (Id.)

Plaintiff argues that the ALJ erred in his determination because "a lack of positive straight leg raising and neurologically related motor strength loss is not inconsistent with disability." (Doc. No. 16-1 at 5.) But as the Acting Commissioner rightly notes, Plaintiff's argument misses the point. In determining whether to accord a treating physician's opinion controlling weight, the ALJ must assess whether the opinion is "inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); see also id. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight the [SSA] will give to that medical opinion."). In other words, an ALJ may choose not give controlling weight to a treating physician's opinion if that opinion is substantially inconsistent with the claimant's medical history. See Matney v. Sullivan, 981 F.2d 1016, 1019–20 (9th Cir. 1992) (An "ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings[.]").

In light of the numerous inconsistencies between the severe limitations outlined in Dr. Lopez's opinion, and Plaintiff's more benign diagnostic and treatment history, the

Court concludes that the ALJ's decision not to give Dr. Lopez's opinion controlling weight is based on legitimate reasons supported by substantial evidence. (See, e.g., AR 420 (treatment notes from March 25, 2015 (lumbar examination revealed "5/5 motor strength . . . in all muscle groups tested," Plaintiff "is able to heel and toe stand without difficulty," and "no gross sensory deficits"); id. at 275 (treatment notes from January 10, 2014, diagnosing Plaintiff with a lumbar sprain, and noting that he has "stable" range of motion in his lumbar region, normal motor strength, and "no gross sensory deficits"); id. at 279 (same observations on January 30, 2014); id. at 312 (treatment notes from November 16, 2012, showing "full strength" in "all muscle groups tested" and "no gross sensory deficits").) Because the ALJ set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof, and ma[de] findings" consistent with available clinical evidence, the ALJ was entitled to not treat Dr. Lopez's opinion as conclusive. Magnallanes, 881 F.2d at 751.

**B.** **The ALJ Appropriately Applied 20 C.F.R. § 404.1527(c) in Deciding to Give Dr. Lopez's Opinion Little Weight**

Plaintiff next argues that, after deciding not to give Dr. Lopez's opinion controlling weight, the ALJ did not appropriately consider the factors articulated in 20 C.F.R. § 404.1527(c) in deciding whether to give the opinion greater weight than the other medical evidence in the record. (Doc. No. 16-1 at 6.) As the Acting Commissioner correctly points out, Plaintiff's argument is inconsistent with the careful consideration of the record evident in the ALJ's written decision.

The Ninth Circuit has recently held that "[w]hen a treating physician's opinion is not controlling," it must be "weighted according to factors such as the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)–(6)). An ALJ's failure to consider the § 404.1527(c) factors "constitutes reversible legal error." Id. at 676. In assessing an ALJ's compliance with § 404.1527(c),

district courts must only consider "the ALJ's stated bases" for discounting the treating physician's opinion, and may not "look to the remainder of the record to support the ALJ's decision[.]" Id. at 677 n.4.

As courts applying the Ninth Circuit's decision have noted, "Trevizo does not demand a full-blown written analysis of all the [§ 404.1527(c)] factors; it merely requires some indication that the ALJ considered them." Hoffman v. Berryhill, No. 16-cv-1976-JM-AGS, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), report and recommendation adopted by 2017 WL 4844545 (Sept. 14, 2017); accord Yantos v. Berryhill, No. 15-cv-2733-JAH-BGS, 2018 WL 899126, at *6 (S.D. Cal. Feb. 14, 2018) ("The ALJ is certainly required to consider all of the [§ 404.1527(c)] factors, but the regulations and rulings contain no requirement that each and every factor be specifically analyzed in the ALJ's decision."); Standen v. Berryhill, No. 2:16-cv-1267-EFB, 2017 WL 4237867, at *8 (E.D. Cal. Sept. 25, 2017) ("The court concludes that it should not read into Trevizo a requirement that ALJs explicitly recite an analysis of each § 404.1527(c) factor in each of their decisions. Rather, Trevizo requires that the record reflect that the ALJ actually considered and applied the appropriate factors."). Thus, the ALJ's decision must be sustained if "the record sufficiently shows [that the ALJ] considered the necessary elements." Hoffman, 2017 WL 3641881, at *4.

Here, the record reflects that the ALJ adequately considered the § 404.1527(c) factors. The ALJ described Dr. Lopez as Plaintiff's "treating physician," showing that the ALJ was aware that Dr. Lopez examined Plaintiff and had a treatment relationship with him. See 20 C.F.R. § 404.1527(c)(1) (greater weight given to examining physicians), (2) (ALJ will consider treatment relationship). And the ALJ extensively reviewed Plaintiff's medical history, and expressly based his decision to discount Dr. Lopez's opinion on its inconsistency with the record as a whole. Id. § 404.1527(c)(3) (ALJ will consider "the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources"), (4) (ALJ will consider opinion's consistency "with the record as a whole"), (6) (ALJ will consider "the

extent to which a medical source is familiar with the other information in your case record").  The thoroughness of the ALJ's decision stands in stark contrast to the "conclusory" opinion rejected in <u>Trevizo</u>, where "the ALJ pointed to nothing in [the] treatment notes or elsewhere in the clinical record that contradicted the treating physician's opinion."  871 F.3d at 677.  The Court therefore concludes that the ALJ did not commit legal error in according Dr. Lopez's opinion little weight.

**CONCLUSION**

For the foregoing reasons, the Court concludes that the ALJ did not commit reversible error in giving Dr. Lopez's opinion little, as opposed to controlling, weight.  The Court therefore **DENIES** Plaintiff's motion for summary judgment, **GRANTS** the Acting Commissioner's cross-motion for summary judgment, and **AFFIRMS** the ALJ's order.

**IT IS SO ORDERED.**

DATED: March 9, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT